UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
**MARISOL MCCARTHY**,                                        :
                                                             :
                Plaintiff,   :
                                                             :
       – against –                        :  **MEMORANDUM DECISION**
                                                             :  **AND ORDER**
**COMMISSIONER OF SOCIAL SECURITY**,                         :
                                                             :  1:19-CV-04760 (AMD)
                Defendant.   :
                                                             :
------------------------------------------------------------ X

**ANN M. DONNELLY**, United States District Judge:

        The plaintiff seeks review of the Social Security Commissioner's decision that she was not disabled for the purpose of receiving benefits under Title II of the Social Security Act. For the reasons that follow, I deny the Commissioner's motion for judgment on the pleadings, grant the plaintiff's cross-motion, and remand the case for further proceedings.

**BACKGROUND**

        On July 19, 2015, the plaintiff applied for disability insurance benefits, alleging disability because of diabetes, neuropathy, hypertension, hypothyroidism, claudication, carpal tunnel syndrome, depression, severe back and hip pain and migraines, with an onset date of January 14, 2015.[1] (Tr. 86-88, 215, 218.) The plaintiff's claim was denied on October 19, 2015. (Tr. 98.)

        Administrative Law Judge Monica D. Jackson held a hearing on June 14, 2018, at which a vocational expert and the plaintiff, represented by a lawyer, testified. (Tr. 52-85.) In a June 29, 2018 decision, the ALJ denied the plaintiff's disability claim. (Tr. 22-35.) She found that the plaintiff had the following severe impairments: "diabetes mellitus with neuropathy, hypertension, hyperlipidemia, morbid obesity, sleep apnea, bronchial asthma, depression, and dysthymic disorder," but that none of these impairments met or equaled the applicable listings.

---

[1] Her Disability Report stated that she also had morbid obesity. (Tr. 225.)

(Tr. 28-30.) She concluded that the plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) with limitations:

> [S]he could stand and walk four hours in an eight-hour workday. She would need an option to alternate to sitting for 30 minutes after every 30 minutes of standing or walking. She could remain on-task while sitting. [She] can occasionally operate foot controls. She could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. She can never climb ropes, ladders, or scaffolds. She can never be exposed to high, exposed places or moving mechanical parts. [She] can have occasional exposure to weather, extreme heat, extreme cold, wetness, humidity, vibration, and atmospheric conditions. She can tolerate a moderate noise intensity level as defined in the Dictionary of Occupational Titles/Selected Characteristics of Occupations. She can tolerate occasional exposure to light brighter than that typically found in an indoor work environment such as an office or retail store. [She] can understand, remember and carryout simple instructions and make simple work-related decisions. She can sustain an ordinary routine without special supervision. [She] can work at a consistent pace throughout the workday but not at a production-rate pace where each task must be completed within a strict time deadline. She can tolerate occasional changes in work setting.

(Tr. 30-31.) Relying on the testimony of the vocational expert, the ALJ found that the plaintiff was capable of performing her past relevant work as a station agent. (Tr. 34.)

The Appeals Council denied the plaintiff's request for review on June 12, 2019. (Tr. 1-6.) The plaintiff filed this action on August 14, 2019 (ECF No. 1), and both parties moved for judgment on the pleadings (ECF Nos. 9, 14).

## STANDARD OF REVIEW

A district court reviewing a final decision of the Commissioner must determine "whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004), *as amended on reh'g in part*, 416 F.3d 101 (2d Cir. 2005). The court must uphold the Commissioner's factual findings if there is substantial evidence in the record to support them. 42 U.S.C. § 405(g). "'[S]ubstantial evidence' is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.'" *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The court must defer to the Commissioner's factual findings when they are "supported by substantial evidence," but will not "simply defer[]" "[w]here an error of law has been made that might have affected the disposition of the case." *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (internal citations and quotation marks omitted). Thus, "[e]ven if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision." *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

## DISCUSSION

The plaintiff claims that the ALJ's decision was not supported by substantial evidence, citing twelve "errors and omissions." (ECF No. 14.) In particular, she challenges the ALJ's decision to not assign controlling weight to her treating physicians' reports and findings, and says that the ALJ did not consider the full range of her conditions and whether they met a listing. The plaintiff objects to the hypotheticals that the ALJ put to the vocational expert, and maintains that the defendant should have considered records submitted to the Appeals Council after the ALJ issued her decision.

### I. RFC Determination

ALJ Jackson found that the plaintiff had the residual functional capacity to perform light work with limitations. (Tr. 30-31.) She based her determination on the plaintiff's representations, her medical records, and the opinion of Dr. Christopher Flach, a consultative examiner who conducted a single psychiatric evaluation. (Tr. 30-34, 520-23.) The ALJ assigned "little weight" to the opinions of Dr. John Fkiaras, a consultative examiner, and Dr. John Szalyga, the plaintiff's treating physician, both of whom opined that the plaintiff had limitations

3

in walking, standing and using her hands, in addition to other physical limitations. (Tr. 33-34, 513-17, 576-79.) While the ALJ referred to records from Dr. Javid Yadegar, who treated the plaintiff from 2012 to 2017, the record did not include Dr. Yadegar's opinion. (Tr. 31-34, 225, 427-63, 524-73.)

After a consultative psychiatric examination on October 7, 2015, Dr. Flach concluded that the plaintiff's symptoms would interfere mildly with her ability to function; she could perform simple tasks and maintain attention and concentration, and had mild problems performing some complex tasks without extra time and support, relating to others and dealing with stress. (Tr. 520-23.) The ALJ gave his opinion "great weight" because it was consistent with the doctor's observations in the evaluation, because there was no evidence that the plaintiff had ever had therapy, and because the plaintiff said that her medications alleviated her symptoms. (Tr. 33.)

Dr. Fkiaras conducted a consultative internal medicine examination on the same day. (Tr. 513-17.) He concluded that the plaintiff was "restricted from any lifting, carrying, pushing, pulling, squatting, kneeling, . . . crouching[,] . . . activities which require exposure to unprotected heights, driving[,] . . . operating machinery[, and] . . . activities which require great exertion;" had "moderate to severe limitation bending;" had "moderate" limitations walking, climbing stairs and standing extended periods; and "should avoid smoke, dust, and known respiratory irritants," and "activities which require repetitive motion of the bilateral hands." (Tr. 517.) The ALJ gave his opinion "little weight" because it was "internally conflicting" and "inconsistent." (Tr. 33.) Specifically, the ALJ noted that at one point Dr. Fkiaris said that the plaintiff could do "no lifting," but also recommended that she should avoid "great exertion." (*Id.*) The ALJ also cited

4

Dr. Fkiaras' findings that the plaintiff's hands were normal, that she could walk on her heels and toes, and that her x-ray did not show any abnormality.  (*Id.*)

The ALJ also assigned little weight to the opinion of Dr. Szalyga, who treated the plaintiff for about a year.  (Tr. 33-34, 576-79.)  He concluded in a June, 2018 opinion that the plaintiff could sit and stand or walk for less than two hours in an eight hour working day, must be permitted to shift positions and walk around, should elevate her legs for two to three hours a day, and that she needed an assistive device when she stood or walked.  (Tr. 576-79.)  He also opined that she could occasionally lift twenty pounds, could rarely climb stairs, and could never crouch, squat or climb ladders.  (Tr. 578.)  In his view, the plaintiff could use her fingers, hands and arms for between one percent to 33 percent of a day, depending on the task and the body part used.  (Tr. 578.)  Describing Dr. Szalyga's "extreme limitations" as inconsistent with the record, the ALJ cited Dr. Fkiaras' observations that the plaintiff had no abnormalities in her hands, that she had no treatment for a hand condition, her own representations to Dr. Yadegar about what she could do on a daily basis and to Dr. Szalyga that she was in no pain, that she had never been prescribed an assistive device and the absence of any mention of leg elevation in the treatment notes.  (Tr. 33-34.)

The plaintiff disputes the ALJ's decisions about the appropriate weight to give the opinions of her treating physicians, Dr. Szalyga and Dr. Yadegar, (ECF No. 14 at 14-16), while the defendant maintains that the record supports the ALJ's determination, and that a consultative physician's opinion may serve as substantial evidence (ECF No. 10 at 27-28).

The treating physician rule "requires that the opinion of a claimant's treating physician be accorded 'controlling weight' if it is well supported and not inconsistent with other substantial evidence in the record."  *Corporan v. Comm'r of Soc. Sec.*, No. 12-CV-6704, 2015 WL 321832,

5

at *4 (S.D.N.Y. Jan. 23, 2015) (quoting *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000)); *see also Gavazzi v. Berryhill*, 687 F. App'x 98, 100 (2d Cir. 2017) (summary order). If the ALJ decides that the treating physician's opinion does not merit controlling weight, she must "comprehensively set forth [her] reasons for the weight assigned to a treating physician's opinion." *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (quotation marks and citation omitted); *accord* 20 C.F.R. § 404.1527. The factors that the ALJ "must consider" include:

> (i) The frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

*Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *accord* 20 C.F.R. § 404.1527. Failure to provide "good reasons" for the weight assigned to a treating physician's opinion is a ground for remand. *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999); *see also Fontanez v. Colvin*, No. 16-CV-1300, 2017 WL 4334127, at *18 (E.D.N.Y. Sept. 28, 2017) (the ALJ's "failure to provide 'good reasons' for not crediting a treating source's opinion is ground for remand") (citations and quotation marks omitted).

The ALJ explained that she assigned Dr. Szalyga's opinion little weight because it was inconsistent with Dr. Fkiaras' observations and the plaintiff's representations, and because there was no evidence that the plaintiff had been treated for a hand condition, used an assistive device or needed to elevate her legs. Notably, the ALJ found that Dr. Fkiaras' opinion also merited little weight, so it is hard to see how his opinion could undermine Dr. Szalyga's. It is not clear, in any event, that Dr. Fkiaras' observations are inconsistent with Dr. Szalyga's opinion. Dr. Fkiaras also opined that the plaintiff should avoid activities that require repetitive motion of the hands, and a finding that a patient's hands are normal does not necessarily undermine the

6

conclusion that she could only use her hands for a small portion of the workday. Moreover, where there is "a conflict of views between a treating doctor and a onetime consultant, the conflict should be resolved in favor of the treating physician." *Cabreja v. Colvin*, No. 14-CV-4658, 2015 WL 6503824, at *30 (S.D.N.Y. Oct. 27, 2015); *see also McGill v. Saul*, No. 18-CV-6430, 2020 WL 729774, at *5 (E.D.N.Y. Feb. 13, 2020) (same).

The ALJ also relied on the plaintiff's representations at her examinations about her conditions and the things she could do, but it is not clear to which statements the ALJ was referring. For example, the ALJ cited progress notes from May 6, 2015, which say only "Diet: cooks at home." (Tr. 445.) The ALJ also pointed to the plaintiff's report that she had "no pain" when Dr. Szalyga issued his opinion, but that statement does not say anything about the plaintiff's abilities. While portions of Dr. Szalyga's records discuss the plaintiff's abilities to do errands, they are inconsistent, saying both that the plaintiff had "difficulty doing errands alone" (Tr. 582) and "no difficulty doing errands alone" (Tr. 592). *See McGill*, 2020 WL 729774, at *4 ("The ALJ is not permitted to cherry pick from the treatment record only evidence that is inconsistent with the treating source's opinion in order to conclude that the opinion should be accorded less weight.") (quoting *Quinto v. Berryhill*, No. 17-CV-24, 2017 WL 6017931, at *14 (D. Conn. Dec. 1, 2017)) (internal quotation marks omitted).

To the extent that Dr. Szalyga's records were incomplete or contradictory, the remedy was to seek clarification from Dr. Szalyga, and then make a determination about the appropriate weight to give his opinion. *See McGill*, 2020 WL 729774, at *4 ("The ALJ, while acknowledging that [two doctors] were Plaintiff's treating physicians, accorded 'partial weight' to their opinions because they 'did not provide any basis or reasoning to support their respective opinions.' However, since the ALJ deemed the treating physicians' opinions lacking in support,

7

the ALJ should have sought clarification from them regarding the deficiencies she perceived in their opinions.") (quoting the record); *Cepeda v. Berryhill*, No. 18-CV-7304, 2019 WL 7483937, at *12 (S.D.N.Y. Dec. 12, 2019), *report and recommendation adopted*, 2020 WL 58236 (S.D.N.Y. Jan. 6, 2020) ("If the ALJ is not able to fully credit a treating physician's opinion because the medical records from the physician are incomplete or do not contain detailed support for the opinions expressed, the ALJ must request such missing information from the physician.").

There may be good reasons to discount the various medical opinions in this record, but because the medical record is incomplete, the ALJ ends up substituting her own judgment on the plaintiff's physical limitations. *See Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (an ALJ cannot "arbitrarily substitute h[er] own judgment for competent medical opinion") (citation omitted); *Quinto v. Berryhill*, No. 17-CV-24, 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017) ("An ALJ is prohibited from 'playing doctor' in the sense that an ALJ may not substitute his own judgment for competent medical opinion.") (citations omitted). The ALJ gave little weight to the only doctors who either treated the plaintiff or assessed her physical limitations, and the basis in the record for the ALJ's conclusions about the plaintiff's physical limitations is not clear. *See Benman v. Comm'r of Soc. Sec.*, 350 F. Supp. 3d 252, 260 (W.D.N.Y. 2018) ("Having reviewed the record, the Court finds that it is neither clear nor complete and does not contain a useful assessment of Plaintiff's physical limitations. . . . In rejecting the opinion of Dr. Toor—the only medical opinion in the record relating to Plaintiff's physical limitations—the ALJ substituted his own medical opinion for Plaintiff's physical limitations."); *Mariani v. Colvin*, 567 F. App'x 8, 10 (2d Cir. 2014), *as amended* (July 30, 2014) ("Rejecting the treating physician's conclusion that [the plaintiff] could not use his hand at all, the ALJ found that he could use his hand fifty

8

percent of the time. There is not substantial evidence in the record for this alternative conclusion.").

The ALJ did not, as the plaintiff claims, assign little weight to the opinion of the plaintiff's other treating physician, Dr. Yadegar, because Dr. Yadegar did not offer an opinion. Although the ALJ should consider seeking his opinion, especially since he treated the plaintiff for approximately five years, the ALJ did not commit any error.[2]

Remand is appropriate to allow the ALJ to develop the record and reassess the plaintiff's RFC. On remand, the ALJ should also consider the extent to which any additional evidence affects her decision about the plaintiff's subjective description of her symptoms.[3]

## II. Consideration of the Plaintiff's Impairments

The ALJ found that the plaintiff's headaches were a non-severe impairment because there was insufficient evidence that they had more than a minimal effect on her ability to work. (Tr. 28-29.) She also concluded that the plaintiff's claimed exposure to Epstein-Barr virus was a non-medically determinable impairment because the record "d[id] not contain a confirmation for or diagnosis of this condition based on objective testing." (Tr. 29.) The plaintiff claims that these conclusions were wrong. (ECF No. 14 at 19, 20-21.)

As the ALJ acknowledged, the record includes documentation that the plaintiff suffered from headaches; one report stated that the plaintiff had headaches every day for a month. (Tr. 28-29, 456.) However, there is no medical opinion that addresses the effect the plaintiff's

---

[2] The plaintiff also takes issue with the ALJ's reliance on Dr. Flasch's opinion, which he issued before the plaintiff began receiving psychiatric treatment. She argues that Dr. Flasch's opinion is inconsistent with records that were submitted after the ALJ issued her decision. As discussed in Section V, the ALJ should consider these records and whether they affect her reliance on Dr. Flasch's opinion.

[3] The ALJ found that the plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 31.)

9

headaches had on her ability to work. As for Epstein-Barr virus, it is not clear from the record if Dr. Szalyga conclusively diagnosed the plaintiff with prior exposure to the virus. In his opinion, the doctor noted that "Epstein Barr Virus—Indicates prior exposure this has been associate[d] with fatigue" (Tr. 579), and his medical records state that the plaintiff's test results were "[s]uggestive of a past Epstein-Barr Virus infection" (Tr. 586). The ALJ should attempt to develop the record on these conditions and reassess their severity. *Cassell v. Berryhill*, No. 15-CV-734, 2018 WL 4158305, at *5 (E.D.N.Y. Aug. 30, 2018) ("At bottom, the ALJ must make 'every reasonable effort' to obtain reports from medical sources to fill gaps in the administrative record.") (citing 20 C.F.R. § 416.912).

### III. Listings Analysis

The ALJ found that the plaintiff's impairments did not meet or equal a listing. (Tr. 29-30.) The plaintiff contends that this was error, because of the plaintiff's morbid obesity and diabetes mellitus with neuropathy. (ECF No. 14 at 14.)

"[T]here is no listing for obesity," but ALJs must consider its effects in evaluating disability. Social Security Ruling, SSR 02-1p; Titles II and XVI: Evaluation of Obesity, 2002 WL 31026506. The ALJ satisfied this obligation by accounting explicitly for the plaintiff's obesity at step three. *See Huyck v. Colvin*, No. 16-CV-6331, 2017 WL 2957867, at *12 (W.D.N.Y. July 11, 2017) (the ALJ "adequately accounted for" the plaintiff's severe obesity at step three where she "noted that there is no specific medical listing regarding obesity, but acknowledged her duty to fully consider obesity" in making her decision).

Nor is diabetes mellitus a listed impairment. Social Security Ruling, SSR 14-2p; Titles II and XVI: Evaluating Diabetes Mellitus, 2014 WL 2434070. "However, the effects of [diabetes mellitus], either alone or in combination with another impairment(s), may meet or medically

10

equal the criteria of a listing in an affected body system(s)." *Id.* SSR 14-2p cites diabetic neuropathy as an example of an effect of diabetes, and states that this condition is evaluated under the neurological listings (11.00). *Id.* Although the ALJ considered the plaintiff's diabetes pursuant to 14-2p at step three, she did not also mention the plaintiff's neuropathy or evaluate this condition under the neurological listings. On remand, she should consider whether the plaintiff's neuropathy meets the neurological listing requirements.

## IV. Vocational Expert Hypotheticals

The plaintiff claims that the ALJ posed hypotheticals to the vocational expert that did not account for the full extent of her mental and physical impairments. (ECF No. 14 at 19-20.)

"A vocational expert's testimony does not constitute substantial evidence where the ALJ asks about a hypothetical claimant whose limitations do not actually mirror those of the claimant." *Baker v. Berryhill*, No. 17-CV-8433, 2019 WL 1062110, at *35 (S.D.N.Y. Feb. 19, 2019), *report and recommendation adopted*, 2019 WL 1059997 (S.D.N.Y. Mar. 6, 2019); *see also Mancuso v. Astrue*, 361 F. App'x 176, 179 (2d Cir. 2010) (the Commissioner may rely on a vocational expert's opinions concerning a hypothetical claimant so long as the ALJ's hypothetical mirrors the plaintiff's RFC and is based on substantial evidence).

On remand, the ALJ should reassess the plaintiff's residual functional capacity. If the ALJ finds that the plaintiff's limitations are different from those of the hypothetical claimant upon whom the vocational expert made her conclusion, the ALJ should ask the vocational expert to re-evaluate the plaintiff's vocational options.

## V. Additional Evidence Submitted to the Appeals Council

The plaintiff submitted additional evidence to the Appeals Council, including a letter from psychotherapist Zi Wang on the subject of the plaintiff's mental health treatment from May

11

22 through June 7, 2018, as well as some September 2018 hospital records.[4]  The plaintiff claims that the Commissioner should have considered these records.  (ECF No. 14 at 18, 21.)

A court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]"  42 U.S.C. § 405(g).  Evidence is "new" if the Commissioner has not considered it previously and it is "not merely cumulative of what is already in the record."  *Corona v. Berryhill*, No. 15-CV-7117, 2017 WL 1133341, at *19 (E.D.N.Y. Mar. 24, 2017) (quoting *Jones v. Sullivan*, 949 F.2d 57, 60 (2d Cir. 1991)) (internal quotation marks omitted).  "New evidence is considered material if (1) it is 'relevant to the claimant's condition during the time period for which benefits were denied,' (2) it is 'probative', and (3) there is 'a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide the claimant's application differently.'"  *Id.* (quoting *Williams v. Comm'r of Soc. Sec.*, 236 F. App'x 641, 644 (2d Cir. 2007)).

Aside from the laboratory results that were already part of the record, the records submitted to the Appeals Council are new.  While Zi Wang's letter does not provide much detail, it lists additional diagnoses, including posttraumatic stress disorder and agoraphobia, which suggest that the record did not fully capture the extent of the plaintiff's conditions.  Wang also notes the plaintiff's "weekly verbal therapy" and her reports of mood swings, sadness, lack of focus and motivation, and crying spells.  (Tr. 17.)  There is a reasonable probability that Wang's letter would have influenced the ALJ's decision, especially since the ALJ gave Dr. Flach's opinion great weight in part because there was no evidence that the plaintiff received therapy.

---

[4] The plaintiff also submitted laboratory results that were already part of the record.

12

Accordingly, the ALJ should consider it.  The hospital records from September of 2018, however, are not relevant to the plaintiff's condition during the relevant period, which ended on June 29, 2018.  Although the plaintiff contends that these records "relate to" the plaintiff's condition, they do not explain or analyze it, and there is not a reasonable probability that they would have influenced the Commissioner's decision.

## CONCLUSION

The plaintiff's motion for judgment on the pleadings is granted and the Commissioner's motion is denied.  The case is remanded for further proceedings consistent with this opinion.

**SO ORDERED.**

       s/Ann M. Donnelly

       ANN M. DONNELLY
       United States District Judge

Dated: Brooklyn, New York
       August 25, 2020